UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | |
|---|---|
| STATE OF TEXAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 6:20-cv-00037-H |
| v. ) | |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant. ) | |

**SETTLEMENT AGREEMENT AND CONSENT DECREE**

This Agreement is made, as of the Effective Date below, between the State of Texas ("State") and the United States, as defined in Paragraph 2 and referred to herein individually as "Party" and collectively as "Parties."

WHEREAS, this action involves a claim under section 107(a) of CERCLA, 42 U.S.C. § 9607(a), by the State against the United States to recover costs allegedly incurred by the Texas Commission on Environmental Quality ("TCEQ") in response to the release or threatened release of hazardous substances at the SESCO Site; and

WHEREAS, the United States denies that it is liable under CERCLA; and

WHEREAS, the Parties desire to enter into this Agreement to have a full and final resolution and settlement, without the admission or adjudication of any matter of fact or law, of any and all claims of any kind whatsoever in law or in equity, including but not limited to claims under CERCLA, that were, could now be, or hereafter could be asserted by the State against the United States in connection with the SESCO Site and Covered Matters, and to avoid the complication and expense of litigating such claims; and

WHEREAS, each of the Parties has received good and valuable consideration for the execution of this Agreement, and the Parties agree, and the Court finds that the Agreement is fair, reasonable, lawful, and in the public interest;

NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED that:

1. <u>Parties Bound</u>. The Parties to this Agreement are the State and the United States. This Agreement applies to, is binding upon, and inures solely to the benefit of the State and the United States. Except as specifically provided, this Agreement does not extend or inure to the benefit of any party, person, or entity other than the State and the United States, and nothing in this Agreement shall be construed to make any other person or entity not executing this Agreement a third-party beneficiary to this Agreement.

2. <u>Definitions</u>. Unless otherwise expressly provided herein, terms used in this Agreement that are defined in CERCLA or its implementing regulations shall have the meaning assigned to them in the statute and regulations, and whenever the terms listed below are used in this Agreement, the following definitions shall apply:

   (a) "Agreement" shall mean this Settlement Agreement and Consent Decree.

   (b) "CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601–75.

   (c) "Contamination" shall mean any pollutant, contaminant, hazardous substance, solid waste, hazardous waste, or petroleum as those terms are defined by CERCLA and/or RCRA.

   (d) "Covered Matters" shall mean any and all claims for Response Costs that were, could now be, or hereafter could be asserted by the State.

2

      (e)    "Day" shall mean a calendar day. In computing any period of time under this Agreement, when the last day would fall on a Saturday, Sunday, or Federal holiday, the period shall run until the close of business of the next day that is not a Saturday, Sunday, or Federal holiday.

      (f)    "Effective Date" shall be the date this Agreement is approved by the Court.

      (g)    "RCRA" shall mean the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901–6992K.

      (h)    "Response Costs" shall mean all past, present, or future costs of response, including but not limited to direct and indirect costs, incurred or to be incurred by the State related to the investigation of, cleanup of, response to, or the corrective action or closure associated with the release or threatened release of any Contamination in, on, at, emanating from, or related to the SESCO Site, including costs to comply with or implement any past or future federal, state, or local environmental requirement or otherwise address environmental conditions at or related to the SESCO Site. Response Costs include accrued interest on all such costs and includes all payments to, or costs of, State, local, or other governmental authorities.

      (i)    "United States" shall mean the United States of America, including all of its departments, agencies, and instrumentalities.

      (j)    "TCEQ" shall mean the Texas Commission on Environmental Quality, an agency of the State of Texas, and its predecessors, successors, assigns, and designees.

      (k)    "State" shall mean the State of Texas and all of its departments, agencies, and instrumentalities, including TCEQ.

(l)     "SESCO Site" shall mean the area that is the subject to the State's claims, described as the electrical equipment repair and sales facility formerly operated by San Angelo Electric Service Company at 926 Pulliam Street, San Angelo, Texas, as well as any area where Contamination that migrated from the SESCO Site had come to be located.

3.  Payment.

(a)     As soon as reasonably practicable after the Effective Date, the United States will pay the sum of SIXTY THOUSAND dollars ($60,000.00) to the State. Payment shall be made pursuant to payment instructions to be provided separately.

(b)     At the time of payment, the United States shall send written confirmation of the Electronic Funds Transfer by email to Thomas.Edwards@oag.texas.gov. The email shall state that the payment is made pursuant to this Agreement and shall reference the "SESCO State Superfund Site" and AG No. CX4325846765.

(c)     If the full balance of such payment is not made in full within 120 days after the Effective Date, then interest on the unpaid balance shall be paid commencing on the 121st day after the Effective Date. Interest shall accrue at the rate specified for interest on investments of the Hazardous Substance Superfund established under subchapter A of chapter 98 of Title 26 of the United States Code.

(d)     If the payment required under this Paragraph is not made within 180 days after the Effective Date of this Agreement, the State may apply to the Court for such relief as the Court may deem appropriate, subject to the limitations set forth in subparagraph (e) below.

(e)     The Parties to this Agreement recognize and acknowledge that the payment obligations of the United States under this Agreement can only be paid from appropriated funds legally available for this purpose. Nothing in this Agreement shall be

4

interpreted or construed as a commitment or requirement that the United States or any federal agency obligate or pay funds in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other applicable provision of law.

4. <u>Release and Covenant Not to Sue by the State</u>. Upon the Effective Date of this Agreement, for and in consideration of the commitments by the United States in this Agreement, the State hereby forever releases, discharges, and covenants and agrees not to assert (by way of the commencement of an action, the joinder of the United States in an existing action, counterclaim or in any other fashion) any and all claims, causes of action, suits, or demands of any kind whatsoever in law or in equity against the United States which it had, may have had, or may hereafter have, including, but not limited to claims under CERCLA or any other federal law, state law, or common law, arising out of, or in connection with the presence of, the release or threatened release of, or the response to Contamination at or emanating from the SESCO Site.

5. <u>The State's Warranty Against Double Recovery</u>.

(a) The State warrants that it has not sought or received, and shall not in the future seek or receive, any double recovery, i.e., duplicative payment, additional payment, or additional reimbursement, of any of the money being reimbursed or paid by the United States pursuant to this Agreement, whether through insurance, contract, third-party reimbursement, or any other claim, cause of action, suit, or demand of any kind whatsoever in law or in equity against the United States, or any other persons or entities. "Double recovery," in this paragraph, shall not include claims against, or payments from, other potentially responsible parties for the net balance due of the State's response costs and attorneys' fees after accounting for the payment from the United States and all other sources. The State reserves the right to seek full recovery of that net balance from other potentially responsible parties.

5

(b)     Based upon the State's knowledge and belief and subject to the penalties of the False Claims Act, 31 U.S.C. § 3729 et seq., and any other applicable law, the State hereby warrants to the United States that, other than the money paid by the United States pursuant to this Agreement, the State neither has sought nor received from the United States compensation for any Covered Matters, nor will the State seek or receive in the future, further compensation for Covered Matters or reimbursement from the United States of any costs paid or to be paid by the United States pursuant to this Agreement.

(c)     In the event that the State receives double recovery in the manner described in subparagraph (a) above, the State shall, within 90 days thereafter, repay the United States for any amounts paid to the State by the United States pursuant to this Agreement, together with interest thereon calculated from the date that the State receives such payments, at the rate specified for interest on investments of the Hazardous Substance Superfund established under 26 U.S.C. § 9507(d)(3).

6.      Protection Against Claims. The Parties acknowledge and agree, and the Court finds, that the payment to be made by the United States pursuant to this Agreement represents a good faith compromise of disputed claims and that the compromise represents a fair, reasonable, and equitable discharge for Covered Matters. With regard to any claims, including claims for costs or damages, by third parties against the United States for Covered Matters, to the extent such claims or causes of action are based on any actions or activity of the United States at or regarding the SESCO Site that occurred prior to the Effective Date, the Parties agree, and the Court finds, that the United States is entitled as of the Effective Date of this Agreement to contribution protection as provided under 42 U.S.C. § 9613(f)(2) and any other applicable provision of federal or state law, whether by statute or common law, extinguishing the United

6

States' liability in contribution to persons not party to this Agreement. Any rights the United States or the State may have to obtain contribution or otherwise recover costs or damages from persons not party to this Agreement are preserved.

7.  Cooperation of Parties. The Parties agree to join in and support, as may be appropriate, such legal proceedings as may be necessary to secure the Court's approval and entry of this Agreement.

8.  Reservation of Rights.

(a) Nothing in this Agreement shall be construed as a waiver, limitation, or release of any claims or causes of action by the United States (i) to assert against the State any claims or causes of action brought on behalf of the United States Environmental Protection Agency or a federal natural resource trustee; or (ii) to enforce any federal laws, regulations, or orders at or in connection with the SESCO Site or any off-Site area. This Paragraph does not reserve any rights by the United States to assert claims against the State to recover all or part of the monies to be paid pursuant to Paragraph 3 of this Agreement.

(b) The State reserves, and this Agreement is without prejudice to, all rights against the United States with respect to:

   i. seeking judicial enforcement of the terms of this Agreement;
   ii. liability arising from the past, present, or future disposal, release, or threat of release of solid waste or hazardous substances, other than that on the SESCO Site or emanating from the SESCO Site;
   iii. liability based on the United States' ownership or operation of the Site when such ownership or operation commences after the Effective Date of this Agreement;

    iv. liability based on the United States' transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal of solid waste or hazardous substances to, at or in connection with the Site, commencing after the Effective Date of this Agreement;

    v. liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments; and

    vi. criminal liability.

Notwithstanding any other provision of this Agreement, the State retains all authority and reserves all rights to take any response actions authorized by law.

  9. <u>Effect of Settlement/Entry of Judgment</u>.

    (a) This Agreement was negotiated and executed by the State and the United States in good faith and at arm's length and is a fair and equitable compromise of claims. This Agreement shall not constitute or be construed as an admission of liability or of any issue of fact or law, including but not limited to an admission of violation of any law, rule, regulation, or policy by either of the Parties to this Agreement.

    (b) Except as provided above: (i) nothing in this Agreement shall be construed to create any rights or defenses in any person not a Party to this Agreement; and (ii) each Party herein expressly reserves any and all rights (including, but not limited to, rights pursuant to Section 113 of CERCLA, 42 U.S.C. § 9613), defenses, claims, demands and causes of action that the Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto. Nothing in this Agreement diminishes the right of

the State, pursuant to state law and Sections 107 and 113 of CERCLA, 42 U.S.C. § 9607 and 9613, to pursue any such persons to obtain additional response costs or response action and to enter into settlements that give rise to contribution protection pursuant to Section 113(f)(2).

        (c)      Upon approval and entry of this Agreement by the Court, this Agreement shall constitute a final Judgment with respect to the claims resolved by this Agreement.

10.      <u>Non-Parties to This Agreement</u>. Nothing in this Agreement is intended to be, nor shall be construed as a waiver, release or covenant not to sue for any claim or cause of action, administrative or judicial, in law or inequity, which the State or the United States may have against any person, form, partnership, trust, corporation, or any other entity that is not a party to this Agreement.

11.      <u>No Use as Evidence</u>. This Agreement represents the compromise of disputed claims and nothing in this Agreement is intended to be, or shall be construed as, an admission or resolution of any question of fact or law with respect to any liability or responsibility related to the SESCO Site. This Agreement shall not be admissible in any proceeding other than in an action where the United States seeks to demonstrate that it is entitled to contribution protection pursuant to Paragraph 6 of this Agreement.

12.      <u>Conflicts of Law</u>. This Agreement shall be governed and construed under the laws of the United States and federal common law.

13.      <u>Severability</u>. If any provision of this Agreement is deemed invalid or unenforceable, the balance of this Agreement shall remain in full force and effect.

14.      <u>Headings</u>. Any Paragraph headings or section titles in this Agreement are provided solely as a matter of convenience to the reader and shall not be construed to alter the meaning of any paragraph or provision of this Agreement.

15. <u>Notice and Public Comment</u>. This Agreement is a "voluntary settlement agreement" within the meaning of TEX. WATER CODE § 7.110. The Attorney General of Texas has published notice in the Texas Register of the terms set forth herein and has provided the public with an opportunity to comment for thirty (30) days prior to approval. Both the State and the United States reserve the right to withhold their consent if the comments regarding this Agreement disclose facts or considerations which indicate that the Agreement is inappropriate, improper, inadequate, or inconsistent with the provisions of the law.

16. <u>Notice of Approval</u>. Upon approval of this Agreement by the Attorney General of Texas, the State shall immediately provide notice to the United States, by email or fax, to the undersigned attorney for the United States at the address given in the attorney's signature block. The Parties shall then promptly execute the Agreement.

17. <u>Original Counterparts</u>. This Agreement may be executed in any number of original counterparts, each of which shall be deemed to constitute one agreement. The execution of one counterpart by any party shall have the same force and effect as if that party had signed all other counterparts.

18. <u>Integration Provision</u>. This Agreement constitutes the entire Agreement between the State and the United States with respect to Covered Matters. All prior discussions, drafts, and writings are specifically superseded by this Agreement and may not be used to vary or contest the terms of this Agreement. This Agreement may only be amended by a writing signed by all the parties hereto.

19. <u>Representative Authority</u>. The individuals signing this Agreement on behalf of the State and the United States hereby certify that each is authorized to bind legally his or her respective party to this Agreement.

 20. <u>Successors and Assigns</u>. This Agreement shall be binding on any successors and assigns of the Parties.

 21. <u>Notices</u>. All notices and written communications pertaining to this Agreement shall be sent to the Parties at the addresses specified in this Paragraph. In addition, notices addressed to the U.S. Department of Justice shall reference DJ # 90-11-6-21410 and notices addressed to the Office of the Attorney General of Texas shall reference AG # CX4325846765.

  a. For the United States:

   Chief, Environmental Defense Section
   U.S. Department of Justice
   P.O. Box 7611
   Washington, D.C. 20004

  b. For the State:

   Division Chief, Environmental Protection Division
   Office of the Attorney General of Texas
   P.O. Box 12548, MC-066
   Austin, Texas 78711-2548

 20. <u>Retention of Jurisdiction</u>. This Court shall retain jurisdiction both over the subject matter of this Agreement and over the Parties for the duration of the performance of the terms and provisions of the Agreement, for the purpose of enabling a Party to apply to the Court consistent with this Agreement for such further order, direction, and relief as may be necessary or appropriate to construe this Agreement, to effectuate or enforce compliance with its terms, or to resolve any disputes arising under this Agreement.

For the State:

      */s/ Thomas H. Edwards*
      THOMAS H. EDWARDS
      Assistant Attorney General
      Environmental Protection Division

        Office of the Attorney General of Texas
        P.O. Box 12548, MC-066
        Austin, Texas 78711-2548
        (512) 463-2012
        Thomas.Edwards@oag.texas.gov

For the United States:

*/s/ Tsuki Hoshijima*
TSUKI HOSHIJIMA
U.S. Department of Justice
Environmental and Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
(202) 514-3468
tsuki.hoshijima@usdoj.gov

Signed this 22nd day of June, 2020.

        *James W. Hendrix*
        United States District Judge

12